IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT IRVIN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UPPER SOUTHAMPTON TOWNSHIP, | : | NO. 16-1860 |
| RONALD MACPHERSON and | : | |
| JOSEPH GOLDEN | : | |

### MEMORANDUM OPINION

Savage, J.                                                                                                         July 13, 2016

In this § 1983 action, Scott Irvin claims that Upper Southampton Township, Police Chief Ronald MacPherson, and Township Manager Joseph Golden violated his First and Fourteenth Amendment rights in depriving him of his property interest in his pension rights.[1] He contends they did so in retaliation for his speaking out about a Township practice of forcing injured police officers to return to duty while still injured.[2] He asserts that they denied him his "earned pension benefits."[3]

After serving twelve years as a Township police officer, Irvin resigned.[4] Following his resignation, he did not file, as required by Pennsylvania law,[5] a notice of his intention to collect his pension at retirement age and to leave his contributions in the fund until then.[6] After the time for filing his intention had expired, the Township returned his contributions together with interest.[7]

The defendants have moved to dismiss the action. Their principal argument is that the lawsuit is barred by a settlement agreement between Irvin and the Township. In the agreement, Irvin released all claims arising out of his employment with the Township.[8] Because the facts are undisputed, we converted the motion to dismiss to a motion for summary judgment.[9] We conclude that because Irvin's current claim for

pension benefits arises out of his employment with the Township, the settlement agreement bars this action.

## Background

Irvin resigned his position as a Township police officer on February 26, 2015, claiming he was constructively discharged.[10] Several days later, he instructed the Township to direct any further communications to his attorney.[11] On June 25, 2015, after several months of negotiations, Irvin and the Township reached a monetary settlement.[12] The Township also agreed to dismiss outstanding disciplinary charges against Irvin.[13] In return, Irvin released all claims arising by reason of his employment,[14] except "claims under and pursuant to the Pennsylvania Worker's Compensation Act and/or the Heart and Lung Act."[15]

Prior to his resignation, Irvin had complained to private citizens about police department policies.[16] He alleges that after signing the settlement agreement, the Township received a letter criticizing MacPherson and the Township.[17] In retaliation, Irvin claims, the defendants unlawfully divested his pension benefits.

When he resigned, under Pennsylvania law, Irvin had the choice to vest and wait to receive his pension upon reaching retirement age or to withdraw his contributions with interest.[18] If he elected to vest and wait, he was required to notify the pension board of his intention to vest within ninety days of his resignation.[19] Irvin did not file written notice of his intent to vest.[20]

Eight months after Irvin resigned, Township Manager Joseph Golden requested an actuarial service to calculate Irvin's pension payout.[21] The following month, the

Township notified Irvin's counsel of the calculated payout.[22] The Township then remitted his contributions.[23]

## Standard of Review

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

## Analysis

The dispositive issue is whether Irvin released his pension-related claims when he executed the settlement agreement. We find that he did.

Our primary task in interpreting the release, like any other contract, is to determine the intent of the parties. *Truserv Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 260 (Pa. 2012). When the language is clear and unambiguous, we discern the parties' intent based on the common and plain meaning of the words used. *Id.* Effect must be given to all the provisions in the contract. *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001).

We construe a clear and unambiguous contract as a matter of law. *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009). When a contract is ambiguous, it is for the factfinder to ascertain the parties' intent. *Id.* Merely because the parties interpret a contract differently does not mean it is ambiguous. *Espenshade v.*

*Espenshade*, 729 A.2d 1239, 1242 (Pa. Super. 1999). Only where the contract language is capable of being reasonably understood in more than one sense is it ambiguous. *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468-69 (Pa. 2006).

Irvin and the defendants disagree on the meaning of the release language. The settlement agreement provided that Irvin released "all actions, claims, demands, damages, obligations, liabilities, controversies and executions of any kind or nature whatsoever, whether known or unknown, whether suspected or not, which have arisen, or may have arisen, or shall arise by reason of Irvin's employment with Upper Southampton Township."[24]

The defendants argue the phrase "by reason of Irvin's employment" covers all claims "related" to Irvin's "status as a former Township employee."[25] They maintain that Irvin's pension-related claim arises out of his status as a former Township police officer. Thus, they contend, the claim is barred by the release in the settlement agreement.[26]

Irvin contends the release is limited to claims arising during the course of his employment.[27] Relying on the definitions of "reason" and "employment" in Black's Law Dictionary, he argues the release is "confined to matters arising from Irvin's state of being employed or grounded in a dispute between Irvin and his employer."[28] He contends that because he was no longer employed when the Township remitted his pension contributions and failed to notify him of his obligation to advise the pension board that he intended to vest his pension, his claims "cannot be said to arise by reason of his employment, but rather by reason of his lack of employment."[29]

Irvin's pension-related claims arise by reason of his status as a former Township employee. In Pennsylvania, "the nature of retirement provisions for public employees is that of deferred compensation for services actually rendered in the past." *Larsen v. Senate of Com. of Pa.*, 154 F.3d 82, 92 (3d Cir. 1998) (quoting *Com. ex rel. Zimmerman v. Officers & Employees Ret. Bd.*, 461 A.2d 593, 597 (Pa. 1983). Irvin's pension was a benefit of his employment. He contributed to the pension throughout his twelve years of employment. The "deferred compensation" Irvin now seeks accrued during his years of employment with the Township.[30] A claim for pension benefits arises from Irvin's former employment with the Township. Therefore, the release in the settlement agreement included Irvin's current claims.

Even if the release does not bar his claims, the Township is still entitled to summary judgment. Irvin seeks to impose a duty upon the Township that does not exist. The Township had no obligation to advise him of his rights and duties under the Pennsylvania Municipal Retirement Law.[31]

Irvin was required to notify the pension board of his election in writing.[32] He did not notify the pension board of any election. Instead, he belatedly advised the Township that he intended to vest after the statutory time to notify the pension board had expired. In short, the Township did nothing to deprive Irvin of his pension rights nor did it interfere with or impede his rights.

## Conclusion

This action is barred by the release in Irvin's settlement agreement. Even if it was not, there is no actionable claim for a constitutional violation under 42 U.S.C. § 1983. Therefore, we shall grant summary judgment in favor of the defendants.

---

[1] Irvin also brings state-law claims for unjust enrichment and violation of 53 P.S. § 774, which states, "No person participating in a police pension fund established pursuant to the provisions of this act, who becomes entitled to receive a benefit therefrom, shall be deprived of his right to an equal proportionate share therein upon the basis upon which he first became entitled thereto."

[2] Compl. (Doc. No. 1) ¶ 17.

[3] *Id.* ¶ 1.

[4] Joint Facts (Doc. No. 9) ¶¶ 1, 2.

[5] 53 P.S. § 881.213.

[6] *See* Joint Facts at ¶ 6.

[7] *Id.* ¶ 7.

[8] Mot. to Dismiss, Ex. B ("Settlement Agreement and Mutual Release") (Doc. No. 4-2) ¶ 7; Joint Facts ¶ 4.

[9] Order (Doc. No. 8).

[10] Joint Facts ¶¶ 1, 2.

[11] *Id.* ¶ 3.

[12] Settlement Agreement and Mutual Release ¶¶ 2-3.

[13] *Id.* ¶ 6.

[14] *Id.* ¶ 7; Joint Facts ¶ 4.

[15] Settlement Agreement and Mutual Release ¶ 10.

[16] Compl. ¶¶ 16-17.

[17] *Id.* ¶ 29. Although Irvin does not claim that the criticism related to policies about which Irvin had previously complained, we assume it did. Otherwise he could not claim retaliation based on it.

[18] 53 P.S. § 881.213.

[19] *Id.*

[20] Joint Facts ¶ 6.

[21] Mot. to Dismiss, Undisputed Facts (Doc. No. 4) ¶ 7 (incorrectly numbered as the second ¶ 5).

[22] *Id.* ¶ 9 (incorrectly numbered as ¶ 7).

[23] Joint Facts ¶ 7.

[24] Settlement Agreement and Mutual Release ¶ 7.

[25] Mot. to Dismiss (Doc. No. 4) at 6-7.

[26] *Id.*

[27] Resp. (Doc. No. 6) at 6-8.

---

[28] *Id.* at 6.

[29] *Id.* at 7.

[30] *See* 53 P.S. § 881.213.

[31] *Id.*

[32] *Id.*